**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| V. | ) | **DOCKET NO: 0311 1:19-CR-00060-001** |
| | ) | **JUDGE:      Colm F. Connolly** |
| | ) | |
| RYAN EVANS | ) | |

**DEFENSE SENTENCING MEMORANDUM**
**ON BEHALF OF RYAN EVANS**

Through counsel, RYAN EVANS files the following Sentencing Memorandum setting forth all factors that the Court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

**I.     Introduction**

RYAN EVANS is due to be sentenced on February 11, 2020.  Mr. Evans says that he was brought up by his mother, Marian Evans, and they certainly have a very close relationship today. He remembers his mother and father arguing in his young years and the tumultuous life of a house with two parents addicted to cocaine and alcohol.  Mr. Evans basically remembers his sister as running the house and people referring to the house where he lived as a "crack house."

Anyone of a more peaceful upbringing might have welcomed the police coming to the home and taking the parents into custody, but Ryan Evans described the incident as, "when the family home was raided by law enforcement." He still remembers it with negative connotations. Of course you would expect a better outcome for children taken from their parents but these children were all separated, two to an aunt, two to the grandmother, Ryan and his brother Alfred

to a neighbor and then to that neighbor's relative. Ryan Evan's didn't go from the fire to the frying pan, he went from one fire to another fire. He went from one bad situation to just a different bad situation, but it was the only thing he knew and he thought this was 'normal' because he saw this drug scene in many of his friend's homes. By the time Ryan and Alfred realized that they had to get out of where they were living and get to a relative who would really take care of them, it was really too late. They moved to an uncle's house after they realized that their guardian had been stealing their support checks to take care of her own children. This uncle was good, kind and strict but unfortunately after all the turmoil the brothers had experienced up to that point, the strictness was too stark a difference to a teen not used to that and Mr. Evans left there too. He moved on to an aunt who he thought of as "his guardian angel" until this aunt died of cancer.

If you live in a middle class family or better and your life follows the path seen on TV, you have people around you who are supportive and helpful and know what to do to fix things. Mr. Evans was not so fortunate. He didn't have the immediate knowledge or anyone to advise him where to go to try to get help, (at an age when most kids do not even consider this), and so he turned to what he saw around him which was selling drugs. Ultimately, he was selling drugs to help care for the person who mattered to him, his aunt who was so sick with cancer. At the time he just wanted to be able to do for her and it was the only way he knew how. Mr. Evans now sees how wrong that was. Unfortunately, it was something that he saw all around him and he would return to once again to his own chagrin.

The following sentencing memorandum is respectfully submitted to this Court.

## II.    **Sentencing Considerations**

As affirmed in <u>Rita v. United States</u>, 551 U.S. 338 (2007) and by the Third Circuit in

United States v. Ricks, 494 F.3d 394 (3d Cir. 2007), explained below, this Court exercises broad discretion in fashioning a sentence which furthers the directives and purposes of sentencing under 18 U.S.C. §3553(a).

Mr. Evans asks that the Court exercise its discretion and impose a sentence of less than the recommended guideline range of six (6) to twelve (12) months incarceration.

## III.   Post-Booker Sentencing Considerations

### *Rita v. United States* and the District Court's Discretion to Impose Sentence Tailored to Relevant Section 3553(a) Factors, Regardless of Whether the Sentence Varies from the Sentence Calculated under the Guidelines.

**a.** As revised by United States v. Booker, 543 U.S. 220, 245-46 (2005), ……This Court must exercise its sentencing discretion to further the directives and purposes of 18 U.S.C. §3553, the most salient of which are set forth and applied to Ryan Evans' case herein.

## IV.   Application of Statutory Sentencing Factors to the Facts of this Case

In the present case, the following factors must be considered when determining what type and length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing:

## A.   The characteristics and history of RYAN EVANS and the Nature and Circumstances of the Offense (18 U.S.C. §3553(a)(1))

### (I)   History and Characteristics of RYAN EVANS

RYAN EVANS, age 38, was born and raised in Wilmington, Delaware, on July 2, 1981. Mr. Evans says that he was brought up by his mother, Marian Evans, and they certainly have a very close relationship today.  His parents were never married but there were in a relationship until he was eight years old.  Until that time Mr. Evans had a great deal of interaction with his father, Alfred Williams, and then after the separation, it became sporadic.  Years later his father

[3]

was to come back and in recent years they have more consistent contact. That being said, he remembers his mother and father arguing in his young years and the tumultuous life of a house with two parents addicted to cocaine and alcohol. Mr. Evans basically remembers his sister as running the house and people referring to the house where he lived as a "crack house."

To anyone brought up in a home with any sense of right and wrong, healthy behaviors and healthy relationships, the police coming to the home and taking cocaine and alcohol addicted parents into custody, would have been seen as a positive action. Mr. Evans parents weren't taking care of him at the time anyway but he still described the event as the "home was raided by law enforcement." Unfortunately, his two sisters went to live with an aunt, two cousins moved in with their grandmother, and he and his brother went to live with Mr. and Mrs. Brooks, their neighbors. Mrs. Brooks was ill and passed away and then Mr. Brooks was incarcerated so once again Ryan and his brother had to move. Again instead of being sent to family they were sent to Mr. Brooks' sister, Anita. Anita took the money sent by the State of Delaware meant for the two brothers and used it for her own children leaving the Evans brothers to fend for themselves.

Finally, when he was eleven he realized what was happening with the state checks and Mr. Evans and his brother went to live with an uncle. This uncle was very good to them but it was a big adjustment because he was also very strict. They stayed with him until he died from cancer. At that time, Mr. Evans tried to go back to living with his mother but she was incarcerated for shoplifting. He then went to live with his aunt, Millicent Evans. That was probably the best situation he ever had. He loved his aunt very much and would do anything for her. In fact, when she became very ill, also with cancer, it destroyed him and he turned to selling drugs, partly to be able to buy things to comfort his aunt in her final days.

During his formative years, Mr. Evans had almost no supervision or leadership. There

[4]

are many indications that his mother loves him very much and she did what she could for him such as calling a facility where he was located to find out how he was doing or accompanying him to court dates. She is very much involved in his life now that she has overcome many of her own difficulties. Various tests show that Mr. Evans level of intelligence was much higher that his performance demonstrated. It is much easier when you come from an environment where at least one adult is in charge of your supervision while you are growing up.

Mr. Evans has one brother from his mother and biological father, Alfred Evans, 38; two maternal siblings, sisters, Tashonda Evans, age 44, and Tamika Evans, age 42; and four paternal siblings, Tasha Clark, age 44, Tashawn Clark, age 41, Alisha Dollard, age 40 and Dominique Brunson, age 40. All of the siblings live in Delaware.

Mr. Evans has never been married himself. Ryan Evans had been living with his mother and his two sons, Ryan Jr., age twelve and Khadir Hunt, age four. He has custody of both of the boys. He is everything you would want a parent to be and everything Ryan Evans did not have in his parents. He took his boys to school, to sporting events, he took them shopping, spending all kinds of quality time with them. Mr. Evans recently found out he fathered another child, King Tucker, presently age two, and he would like to adopt the child who the mother wants to put up for adoption.[1]

Physically Mr. Evans does not have any health issues other than a damaged knee that he suffered an injury to on a job in 2015.

Mr. Evans has no definitive mental health issues and a mental health evaluation determined that there were no major disturbances in his mental or emotional functioning but he

---

[1] The child's mother has had her rights terminated. There is a court date in Delaware Family Court on March 3, 2020. The parental rights of mr. Evans will be terminated at that hearing and the child will be put up for adoption if

has stated that he can be "hot-headed." Mr. Evans has worked on this issue whenever he was given the opportunity. He participated in anger management counseling at Child Inc. in 2003, and has expressed how this course helped to explain his extreme feelings at that time. He also was a participant in the New Goal's life skills course while at Gander Hill Prison. In 2015, he attended a cognitive behavioral therapy program, "Thinking for a Change," through the U.S. Probation Office. He was an active participant in that program, never missing a class.

Mr. Evans began using marijuana at age twelve or thirteen and began experimenting with PCP at age eighteen. Mr. Evans realizes that the substance abuse led to wrong decisions. He is open to substance abuse treatment.

Mr. Evans was court ordered to participate in a drug and alcohol treatment program, and also to participate in the US Probation Office's Workforce Development Program.

Mr. Evans attended A.I Dupont High School, in Wilmington, Delaware until the 10th grade when he left school when he was arrested for drug related offenses although he did obtain his GED while in federal custody.

When Mr. Evans was at the Delaware Skills Center in 2002 he learned plumbing and electrical skills. He also attended a 12-week welding program they had during September, October and November 2006, completing the educational and training components of the welding program.

On December 15, 2015, Mr. Evans completed the Environmental Protection Agency's Workforce Development Program; the Brownfields Base Level Water Operator Course, run through the Delaware Technical and Community College. In 2015, he also received customer

---

Mr. Evans is not present for that hearing. Mr. Evans wants to attend that hearing and so that the child can live with him and his other two sons.

service certification.

The Court file shows that there have been numerous academic achievement and intelligence evaluations done on Mr. Evans and if a conclusion can be drawn, there is a disparity shown from his test results and his educational achievement. Although that may have come to light now that all documentation relating to Mr. Evans is being examined, the more appropriate question is why wasn't this question asked sooner? Did Mr. Evans need support to stay in school or was there any other support that Mr. Evans needed commensurate with his level of intelligence?

Mr. Evans has shown great resourcefulness and ambition in going out and getting job after job. If one job didn't work out, he didn't let that stop him, he went on to find another one.

From November 2017 to December 2018, Mr. Evans worked at Owens Steele in Wilmington, Delaware, on a full-time basis, earning $17.50 per hour. He had been let go after missing some days at work after a car accident.

From August 3, 2016 through November 2017, Mr. Evans worked at Goodwill Recycling Center in New Castle, Delaware.

Mr. Evans was employed at RNA contractors from July 2014 through May 2016. Part of that time from March 2015 to May 2015, Mr. Evan worked for D.L. Plastics in Newark, Delaware. He also worked part time from February 2016 through March 30, 2016 at Harbor Freight in Newark, Delaware. Immediately after that from April 4, 2016, Mr. Evans began to work at Bell Nursery in Newark, Delaware. He consciously tried to find employment with higher wages and his good skills made this a possibility.

Mr. Evans worked at Helmark Steel, in Wilmington, Delaware for a short time in July 2007, as a welder but this did not work out so he moved on. He did work part time at Dust Away

[7]

Cleaning Service, in Wilmington, starting at the end of November 2007 at $7.75 per hour, in the housekeeping department.

Mr. Evans worked at Dana Rail Care in Wilmington, Delaware from January 27 through May 14, 2007, for $12 per hour as a welder.  The year before that he had worked at Stay in Place in Wilmington, Delaware from April through August 2006 on a full time basis for $8.00 per hour as a laborer.  During the 18-month time period from April 2004 through September 2005, Mr. Evans worked at Touch of Class car detailing for $7.75 per hour.  Mr. Evans remembered that during his teenage years he worked for the City of Wilmington Parks and Recreation Department's summer program.

### (II)  The Offense Conduct

The Drug Enforcement Administration was actually investigating a drug organization they believed was run by Mr. Evans brother, Alfred Evans, in August 2018.   When the agents executed a search warrant at the home of Alfred Evans, it was also the home that Ryan Evans lived in and shared with his mother and two young sons.  Ryan Evans was arrested and charged with marijuana related offenses .

This conduct is not something Mr. Evans is proud of.  He misguidedly decided that this was the way to have money for living expenses.  He has since come to infinitely regret his actions especially as he has come to see the effect it has had on his sons and his relationship with them.

On April 23, 2019, the United States Grand Jury sitting in the District of Delaware returned a 1-count Indictment charging Ryan Evans with Possession with intent to distribute marijuana, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 841(b)(1)(D). Mr. Evans was arrested on March 25, 2019, and has been in custody since that date.

[8]

On October 30, 2019, Ryan Evans appeared before United States District Judge Colm F. Connolly for a change of plea hearing.  Mr. Evans pled guilty to Count One of the Indictment on that date.

**B.**     **The Need for the Sentence Imposed to Promote Certain Statutory Objectives**

    **1.** **To Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment for the Offense.**

A sentence must be "sufficient, but not greater than necessary," to comply with the purposes listed in section 3553(a)(2), namely, the need to:  reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes of the defendant.  Given these circumstances, a non-incarcerative punishment would be "sufficient, but not greater than necessary" to fulfill the congressional established goals of sentencing.  18 U.S.C. § 3553 (a).

The sentencing guidelines include the need to promote respect for the laws of the community and to deter unlawful behavior by its citizens.  Mr. Evans has accepted responsibility for his actions. He acknowledged his wrongdoing and his participation in the offense that was read at the guilty plea hearing.  He is truly sorry for what he has done. Mr. Evans will have to overcome the difficulties he has created for himself and make sure to stay far from this type of life in which he was born into and grown up with.  He wants to return to the two sons that he was so involved with and loves so much and to return to taking care of a new baby he just found out about.  He realizes  that if he wants to return to taking his sons to school, going to PTA meetings, meeting the children's teachers, going to their sporting events and all the other experiences of being a parent, he must walk a different path.

[9]

**2.  To Afford Adequate Deterrence to Criminal Conduct.**

Mr. Evans would be able to pay him debt to society.  His experience so far has taught

him a lesson and has provided more than sufficient deterrence to repeating these actions in the

future.  He has skills as a welder, a laborer, and has learned plumbing and electrical skills and

received customer service certification. He welcomes the opportunity to return to the

community and use his skills to provide for his three children and his to help out his mother and

also to repay society for what he has done.  Given these circumstances, a term of supervised

release would be "sufficient, but not greater than necessary" to fulfill the congressional

established goals of sentencing.  18 U.S.C. § 3553 (a).

**3.  To Protect the Public from Further Crimes of the Defendant**.

Mr. Evans has learned that there is no victimless crime and it is not beneficial to go

astray of the law. He now understands the ramifications of illegal behavior, and he would not

return to a life of lawlessness.  He sees how it has devastated his children and how his mother is

devastated by this behavior.

**4.  To Provide the Defendant with Needed Educational or Vocational Training,
Medical Care, or Other Correctional Treatment in the most Effective Manner.**

Mr. Evans does have employable skills but is open to further education or training to

get a job he is suited for post-incarceration.  He has attended mental health counseling and

would welcome the opportunity to learn more about himself and how to better control his

emotions.

**C.    Kinds of Sentences Available and the Advisory Guideline Range
(§3553(a)(3)&(4))**

**1.    Statutory Provisions; Indictment 0311 1:19-CR-00060-001**

Petitioner has pled guilty to Count One of a 1-Count Indictment. The maximum term of

[10]

incarceration for the offense of Count (1) is five (5) years imprisonment.

21 U.S.C. § 841(a)(1) and  21 U.S.C. § 841 (b)(1)(D).

### 2.    Guidelines Provisions

While the sentencing range set forth under the guidelines is no longer mandatory, that range and the policy statements set forth in the guidelines are factors to be considered in determining the appropriate sentence.  The presentence report correctly calculates the Total Offense Level in this case at 8 and a Criminal History Category of III resulting in the recommended guideline range is 6 - 12 months incarceration.

The guideline range for supervised release is at least two (2) years but not more than three (3) years; pursuant to: U.S.S.G. §5D1.2(c).

## Request for Non Guideline sentence  (Variance)

1. **Disadvantaged childhood and lack of guidance as a youth**

As stated above, Mr. Evans had a tumultuous home life and childhood. He remembers his mother and father arguing in his young years and the tumultuous life of a house with two parents addicted to cocaine and alcohol.  Mr. Evans basically remembers his sister as running the house and people referring to the house where he lived as a "crack house." If he had  lived  in a middle class family or better and his life followed the path written about in books, he would have had people around him who were supportive and helpful and would know what to do to fix things .

He went from one bad situation to just a different bad situation, but it was the only thing he knew and he thought this was 'normal' because he saw this drug scene in many of his friend's homes.  By the time Ryan and Alfred realized that they had to get out of where they were living

and get to a relative who would really take care of them, it was really too late.  They moved to an uncle's house after they realized that their guardian had been stealing their support checks to take care of her own children.

　　Mr. Evans respectfully requests a variance for the reasons stated.


2.  **Extraordinary family circumstances**

　Courts can consider departing downward for a defendant's extraordinary family circumstances and responsibilities. United States v. Johnson, 964 F.2d 124, 128 (2d Cir. 1992).

　The purpose of a reduction under these circumstances is not to benefit the defendant, but to prevent the defendant's family, who rely upon the defendant, from suffering a devastating loss. Id., at 129.  Here, the court affirmed a 13-level departure and a sentence of home detention in a case where the defendant was the sole caretaker of three young children.

　As mentioned above, Mr. Evans has sole custody of his two boys and plans to take his other son following a hearing in Delaware Family Court March 3, 2020.

　　Mr. Evans respectfully requests a variance for the reasons stated.

## V.    <u>Conclusion</u>

For all of the above stated reasons, Mr. Evans requests compassion and leniency in sentencing.  Counsel therefore, respectfully submits that the presence of these mitigating factors provide a basis for this Court to exercise its discretion and set a sentence that is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).  He respectfully requests a sentence of time served followed by a term of supervised release.

Respectfully submitted,

Peter A. Levin
Attorney for RYAN EVANS
1927 Hamilton Street
Philadelphia, PA 19130
(215) 563-3454

[13]

## CERTIFICATE OF SERVICE

I, Peter A. Levin, Esquire, hereby certify that I have served a true and correct copy of the within

Defendant's Sentencing Memorandum by e-mail to


Christopher L. de Barrena-Sarobe, Esquire
Assistant United States Attorney
1007 Orange Street, Suite 700
P.O. Box 2046
Wilmington, DE  19899-2046

Butch Williams
United States  Probation Officer
824 Market Street      Suite 400
Wilmington, DE 19801-3588




Date: February 4, 2020




_____
Peter A. Levin, Esquire




[14]